Sarah L. Vuong
Ariela Lake Law & Consulting PLLC
CA Bar No. 258528
1221 Hermosa Ave. Suite 101
Hermosa Beach, CA 90254
(202) 996-5757
Sarah@allc.law

Karen Weinstock
Weinstock Immigration Lawyers, P.C.
1827 Independence Square
Atlanta, GA 30338
Phone: (770) 913-0800
New York Bar # 2985620
kweinstock@visa-pros.com
*Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

XIANGYING CHEN,                              )
                                             )
Plaintiff,                                   )
                                             )
                                             )    CASE NO.: 2:26-cv-3094-KK
        vs.                                  )
                                             )    Judge Kenly Kiya Kato
JOSEPH B. EDLOW, *et al*.                    )
                                             )    Magistrate Judge Castillo
Defendants.                                  )
_____          )

**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**
**AND/OR PRELIMINARY INJUNCTION**

**I.      INTRODUCTION AND RELIEF REQUESTED**

Plaintiff Xiangying Chen, an EB-5 investor whose underlying Form I-526E has been approved,

seeks a narrowly tailored temporary restraining order under Federal Rule of Civil Procedure 65 to:

(a) prevent her removal from the United States while USCIS adjudicates her pending Form I-485;

and (b) require USCIS either to adjudicate the Form I-485 within fourteen (14) days or to file a

status report within seven (7) days identifying all remaining adjudicatory steps and a date certain for decision. USCIS received Plaintiff's Form I-485 on December 1, 2023, approved her Form I-526E on May 7, 2025, and received her RFE response on December 3, 2025.

Plaintiff returned to the United States on July 28, 2025, pursuant to approved advance parole while her Form I-485 remained pending. DHS later detained her, revoked her parole through issuance of the Notice to Appear, and initiated removal proceedings.

Because Plaintiff returned on advance parole while her pre-existing adjustment application remained pending, USCIS retains jurisdiction over the Form I-485 in the current posture, and EOIR is not a practical alternative forum for adjudicating that application.

Without immediate relief, ICE may remove Plaintiff before USCIS adjudicates her Form I-485. Removal before adjudication may cause deemed abandonment of the application and trigger a multi-year inadmissibility bar, thereby destroying the immigration benefit that is the subject of this APA and mandamus action.

Plaintiff does not ask this Court to grant adjustment of status or dictate the substance of USCIS's decision. She asks only that Defendants be temporarily restrained from removing her, and that USCIS be required to act or provide a date certain for action, so the Court can preserve meaningful judicial review.

## II.    FACTUAL BACKGROUND

Plaintiff filed a Form I-526E, Immigrant Petition by Regional Center Investor, on July 21, 2023, based on investments totaling approximately $1.6 million in U.S.-based projects that created significant employment and more than 20 jobs for American workers. Plaintiff filed her Form I-485, Application to Register Permanent Residence or Adjust Status, on December 1, 2023, and USCIS issued a Form I-797C receipt notice dated December 18, 2023.  USCIS issued Plaintiff an

1

approved Form I-512L, Authorization for Parole into the United States, on April 30, 2024. Plaintiff filed a second Form I-526E on August 19, 2024, and USCIS approved that petition on May 7, 2025. Plaintiff most recently returned to the United States on July 28, 2025, pursuant to approved advance parole while her Form I-485 remained pending. On November 28, 2025, USCIS issued a Request for Evidence concerning Plaintiff's Form I-485; Plaintiff responded on December 3, 2025, identifying the approved Form I-526E as the petition on which she wished to proceed. DHS detained Plaintiff on January 14, 2026, and ICE issued a Notice to Appear on January 15, 2026, initiating removal proceedings and charging Plaintiff under INA § 212(a)(7)(A)(i)(I).

On February 11, 2026, the Immigration Judge denied Plaintiff's first motion to terminate, noted that DHS amended the allegations to assert that Plaintiff is an arriving alien, and stated that DHS chose full removal proceedings under INA § 240 rather than expedited removal proceedings. On March 24, 2026, the Immigration Judge again denied termination, while recognizing that Plaintiff may be eligible for the EB-5 immigrant investor adjustment process. On April 16, 2026, the Immigration Judge again declined to dismiss or terminate proceedings, noting that Plaintiff may be eligible for the EB-5 immigrant investor adjustment process and that DHS continued to object to termination.

These EOIR orders confirm that the Immigration Court has not provided, and is not presently providing, an alternative forum for adjudication of Plaintiff's Form I-485. USCIS adjudication is therefore essential to preserve the only pending application capable of resolving Plaintiff's immigration status. Plaintiff submitted an expedite request to USCIS explaining that she was detained, facing removal proceedings, and at risk of imminent and irreparable loss of the immigration benefit if USCIS did not adjudicate her Form I-485 before removal.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs temporary restraining orders and preliminary injunctions. In the Ninth Circuit, the substantive standard for a temporary restraining order is substantially identical to the standard for a preliminary injunction. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001); *A.S. v. Kristi Noem et al.,* No. 5:26-CV-00316-MWC-DTB, 2026 WL 849279, at \*2 (C.D. Cal. Jan. 29, 2026). A plaintiff seeking preliminary injunctive relief must establish that: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *City of San Francisco v. U.S. Citizenship & Immigration Services*, 944 F.3d 773 (9th Cir. 2019) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). A preliminary injunction is an extraordinary remedy and should not issue unless the movant makes a clear showing that she is entitled to such relief. *Id.*

The Ninth Circuit takes a "sliding scale" approach to preliminary relief, under which "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiffs can support issuance of a preliminary injunction, so long as the plaintiffs also show that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up). This approach allows a stronger showing of one *Winter* factor to offset a weaker showing of another. *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 843–44 (9th Cir. 2024); *see Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of

3

irreparable injury and that the injunction is in the public interest."); *cf. California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) ("Likelihood of success on the merits is the most important factor.") (quotations omitted); *Ordonez Banol v. Warden et al.*, No. 5:26-CV-00529-CAS-ACCV, 2026 WL 1018629, at *1 (C.D. Cal. Apr. 14, 2026). A plaintiff may also prove a TRO is warranted by raising 'serious questions going to the merits.'" *NML Cap., Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1125 (C.D. Cal. 2011) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). Where the non-movant is a government entity, "the third and fourth [*Winter*] factors ... merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

A temporary restraining order may be issued upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. *See Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006); *Hoang v. Santa Cruz*, No. EDCV 25-2766 JGB (JCX), 2025 WL 3141857, at *1 (C.D. Cal. Oct. 28, 2025).[1] The status quo is not limited to the posture existing on the date the complaint was filed. Courts may restore the last peaceable, uncontested status that existed before the challenged intervening governmental action. In the Ninth Circuit, the status quo is the last uncontested status

---

[1] In evaluating interim relief, courts in this Circuit distinguish between prohibitory injunctions, which preserve the status quo, and mandatory injunctions, which require a party to take affirmative action. In *Avirmed v. U.S. Department of Homeland Security*, No. 3:25-cv-01310, 2025 WL 1953230 (S.D. Cal. July 16, 2025), the court explained that a prohibitory injunction restrains action and preserves the status quo pending merits adjudication, while a mandatory injunction orders a responsible party to act and is particularly disfavored. The Ninth Circuit defines the status quo as the last uncontested status preceding the controversy. Where requested interim relief is mandatory, the movant must satisfy a heightened standard. In *Sym-Agro, Inc. v. Seipasa, S.A.*, No. 3:21-cv-00429-HZ (D. Or. May 5, 2021), the court stated that a mandatory injunction goes beyond maintaining the status quo, orders a responsible party to take action, and requires the plaintiff to establish that the law and facts clearly favor the plaintiff's position. This heightened scrutiny does not eliminate the Court's equitable authority; it informs the degree of showing required where interim relief affirmatively compels agency action rather than merely restrains removal or preserves existing conditions.

**preceding the controversy**, and mandatory relief is evaluated with heightened scrutiny when it requires affirmative action. *Avirmed v. U.S. Department of Homeland Security*, No. 3:25-cv-01310, 2025 WL 1953230, at *5 (S.D. Cal. July 16, 2025).   Here, the last meaningful uncontested status was Plaintiff's ability to remain in the United States on parole while USCIS adjudicated her pending I-485, before DHS revoked parole, detained her, and placed her in removal proceedings.

Injunctive relief can be prohibitory or mandatory. "A prohibitory injunction prohibits a party from taking action and 'preserve[s] the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (quoting *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 704 (9th Cir. 1988)). "A mandatory injunction orders a responsible party to take action[,] . . . goes well beyond simply maintaining the status quo [p]endente lite[,] [and] is particularly disfavored." *Id.* at 879 (internal quotation marks and citations omitted). "The status quo means 'the last, uncontested status which preceded the pending controversy.'" *N.D. ex rel. Parents Acting as Guardians Ad Litem v. State of Haw. Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010) (quoting *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879). Here, Plaintiff's request is primarily prohibitory because she seeks to preserve the status quo preceding DHS's revocation of parole and initiation of removal proceedings: her physical presence in the United States, with USCIS retaining jurisdiction over her pending Form I-485.

Plaintiff also seeks narrowly tailored mandatory relief requiring USCIS either to adjudicate the Form I-485 or to file a status report identifying remaining adjudicatory steps and a date certain for decision; even under the heightened standard for mandatory relief, that relief is warranted to prevent removal from mooting the APA and mandamus claims. Mandatory injunctions are subject to heightened scrutiny and require the law and facts to clearly favor the moving party. *Sym-Agro, Inc. v. Seipasa, S.A.*, No. 3:21-cv-00429-HZ (D. Or. May 5, 2021).

## IV.    JURISDICTION

Courts have long recognized the principle of maintaining or restoring the status quo ante as a form of equitable relief. *See e.g. J.R. v. Bostock*, 796 F. Supp. 3d 684, 690 (W.D. Wash. 2025) (granting TRO and enjoining government from removing the petitioner to a third country while it adjudicated the claim that the Government has violated the APA by failing to carry out non-discretionary statutory duties and provide due process to seek withholding of removal under CAT). Courts also have the authority to grant stays to preserve the status quo while they determine whether they have jurisdiction. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 290 (1947) ("[T]he District Court unquestionably had the power to issue a restraining order for the purpose of preserving existing conditions pending a decision upon its own jurisdiction."); *see Doe v. Bondi*, No. 25-CV-0805-BJC-JLB, 2025 WL 3539193, at *2, *5-6 (S.D. Cal. July 15, 2025) (the district court issued a temporary stay of Plaintiff's removal to maintain the status quo while the Court evaluated its jurisdiction and the parties' TRO arguments); *Sied v. Duke*, No. 17-cv-06785-LB, 2017 WL 6316821, at *3, 2017 U.S. Dist. LEXIS 204382 at *7-8 (N.D. Cal. Dec. 11, 2017) (finding it common for courts to temporarily stay proceedings and removal while assessing jurisdiction, particularly when the government declines to stipulate to a pause); *Patel v. Barr*, No. 20-3856, 2020 WL 4700636 at *7, 2020 U.S. Dist. LEXIS 145553 at *20 (E.D. Pa. Aug. 13, 2020).

Section 1252(g) does not divest this Court of jurisdiction because the gravamen of Plaintiff's claim is USCIS's unreasonable delay in adjudicating a Form I-485 over which USCIS retains jurisdiction due to Plaintiff's arriving-alien, advance-parole posture. Plaintiff does not seek review of any removal order, nor does she challenge DHS's discretionary decisions to commence proceedings, adjudicate removability, or execute a removal order. She seeks collateral APA and mandamus relief requiring USCIS to adjudicate a pending benefit application. In *Sepulveda Ayala*

*v. Bondi*, 794 F. Supp. 3d 901, 909 (W.D. Wash. 2025), the court held that § 1252(g) did not bar an APA delay claim concerning immigration-benefit adjudication where the plaintiff did not directly challenge execution of removal.

As the Supreme Court found, "[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 119 S.Ct. 936 (1999) (Scalia, J.); *see also Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19, 140 S.Ct. 1891 (2020) ("Regents") (holding court had jurisdiction to review agency decision to rescind DACA, consistent with Section 1252(g), because it was not a decision to "commence proceedings," or to " 'adjudicate' a case or 'execute' a removal order" and was rather a decision to "revoke[ ] a deferred action program with associated benefits." (quoting 8 U.S.C. § 1252(g))); *Jatta v. Clark*, Case No. 19-cv-2086, 2020 WL 7700226, at *7 (W.D. Wash. July 17, 2020) (Report and Recommendation) (Section 1252(g) "d[oes] not strip the district court[s] of jurisdiction to enter injunctive relief," when "the 'gravamen' of the defendant's claim d[oes] not arise from the decision or action to commence [removal] proceedings." (quoting *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004) (en banc))). Recently in *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 909 (W.D. Wash. 2025), the district court found that "[b]ecause Sepulveda Ayala's claims arise from the Government's grant of deferred action rather than from execution of his removal order, Section 1252(g) does not strip this Court of jurisdiction" and enjoining the government from deporting Sepulveda Ayala during the pendency of the case).

This distinction is critical and well-recognized. As the court found in *Uranga v. USCIS*, 490 F. Supp. 3d 86, 96–97 (D.D.C. 2020), APA delay claims fall outside Section 1252(g) because in those cases the plaintiff "is not challenging the commencement, adjudication, or execution of

his removal order" but rather "the government's delay in adjudicating...U-visa waitlist eligibility." The Ninth Circuit has similarly recognized that challenges to agency actions separate from removal proceedings remain within district court jurisdiction. *See Arce v. United States*, 899 F.3d 796, 799-800 (9th Cir. 2018) (claims arising from violation of court's stay order, rather than removal execution itself, fall outside § 1252(g)).

## V.    ARGUMENT

Plaintiff meets all four *Winter* criteria and merits the grant of a Temporary Restraining Order and/or Preliminary Injunction. As discussed below, Plaintiff is likely to succeed on the merits of her claim. USCIS's delay is causing irreparable harm because Plaintiff is detained and in removal proceedings, and a favorable USCIS adjudication would provide a direct basis to seek termination or dismissal of those proceedings and release from detention. The April 16, 2026 IJ order declined termination while noting that Ms. Chen may be eligible for the EB-5 immigrant investor adjustment process and that DHS continued to object. The balance of equities and public interest weigh in Plaintiff's favor where her significant equities outweigh Defendants' and the public has a strong interest in having the government follow the law.

**A.  Plaintiff is Likely to Succeed on the Merits of Her APA and Mandamus Claims.**

***1.  USCIS Has Exclusive Jurisdiction Over Plaintiff's I-485 Because She Returned on Advance Parole While the Application Was Pending.***

Plaintiff's case does not present an ordinary removal-proceeding posture in which the Immigration Judge can adjudicate adjustment of status as an alternative forum. Plaintiff filed her Form I-485 on December 1, 2023, and then returned to the United States on July 28, 2025, pursuant to approved advance parole while the Form I-485 remained pending. The Complaint alleges that, because Plaintiff is an arriving alien who returned on advance parole to pursue a previously filed

adjustment application, USCIS retains jurisdiction over the Form I-485 and the Immigration Court does not have jurisdiction to adjudicate that application unless USCIS first denies it.

The Immigration Court orders confirm the practical consequence of this jurisdictional posture. On February 11, 2026, the Immigration Judge noted that DHS amended the allegations to assert that Plaintiff is an arriving alien and that DHS chose full removal proceedings under INA § 240. On March 24, 2026, the Immigration Judge recognized that Plaintiff may be eligible for the EB-5 immigrant investor adjustment process but denied termination based on unresolved questions.  On April 16, 2026, the Immigration Judge again declined to dismiss or terminate proceedings despite recognizing that Plaintiff may be eligible for the EB-5 immigrant investor adjustment process and noting that DHS continued to object to termination.

These orders reinforce why USCIS adjudication is the only meaningful path to the immigration benefit at issue. EOIR has declined to terminate proceedings and has not adjudicated the Form I-485. USCIS therefore cannot justify continued inaction by pointing to removal proceedings as an alternative forum.

### 2. USCIS Has a Nondiscretionary Duty to Adjudicate Plaintiff's I-485 Within a Reasonable Time.

As Plaintiff has explained in her Complaint, USCIS has a duty to adjudicate her pending immigration benefit application and unreasonably delayed fulfilling that duty for more than two years. *See Liu v. Denayer*, No. CV 21-6653-DMG, 2022 WL 17370527, at *2 (C.D. Cal. July 18, 2022) (noting that defendants did not dispute their non-discretionary duty to act on I-485s within a reasonable time); *Yilmaz v. Jaddou*, 697 F. Supp. 3d 951, 957 (C.D. Cal. 2023) (recognizing that defendants cannot "leave applications languishing in perpetuity" because the APA requires each agency to "proceed to conclude a matter presented to it" within a reasonable time); *Doe v. Risch*, 398 F. Supp. 3d 647, 655 (N.D. Cal. 2019) (holding that "[e]ven where no time limits are imposed

by the enabling statute," defendants have a non-discretionary duty under § 555(b) to adjudicate petitions within a reasonable time).

Section § 555(b) of the APA imposes a "reasonable time" requirement for the adjudication of the I–485 application. 5 U.S.C. § 555(b) (stating that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.") (emphasis added). "The APA requires agencies to 'conclude a matter presented to it' 'within a reasonable time.'" *In re A Cmty. Voice*, 878 F.3d 779, 784 (9th Cir. 2017) (quoting 5 U.S.C. § 555(b)). This means "an agency has a duty to fully respond to matters that are presented to it under its internal processes." *Id*. (quoting *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418 (D.C. Cir. 2004)). This "reasonable time" limitation on adjudication is nondiscretionary and as Plaintiff explained in her Complaint, Defendants have failed to fulfill this duty in a reasonable time period.

Similarly, Congress has stated that, "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). Yet, Plaintiff's I-485 application, filed on December 1, 2023, has been pending for over two years and counting—far beyond the 180-day processing period Congress contemplated.[2] Related, the language in the applicable regulations also indicates that USCIS has a nondiscretionary duty to process and make a decision on her adjustment of status application. *See e.g.*, 8 C.F.R. § 245.2(a)(5) ("the applicant *shall* be notified of the decision of the director and, if the application is denied, the reasons for the denial.") (emphasis added); 8 C.F.R. § 245.6 ( "[e]ach application for adjustment of status under this part *shall* be interviewed by an

---

[2] While Plaintiff is not asking this Court to decide her I-485 application, she highlights that her case is not complicated and she is clearly eligible for adjustment under the statute. Her visa priority date is current (and has been since she applied). She responded to USCIS's RFE in approximately 5 days, (which only asked for confirmation of which I-526E she would like to use) and yet USCIS has continued to delay a decision for another 150 days.

10

immigration officer.") (emphasis added); *see also, Saleem v. Keisler,* 520 F.Supp.2d 1048, 1054 (W.D.Wis.2007)) ("finding that these regulations are drafted on the assumption that defendants will decide each application" and that the absence of a statutory deadline for making a decision alone is not sufficient to support an inference that Congress intended to remove jurisdiction); Singh v. Still, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007) (indicating that regulations reflect a nondiscretionary duty to process applications for adjustment of status); *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *5 (C.D. Cal. Aug. 28, 2025) (government agencies are required to follow their own regulations.).

### 3. The TRAC Factors Support a Finding of Unreasonable Delay.

Ninth Circuit courts apply the TRAC factors to determine whether agency delay is unreasonable under the APA. District courts in the Ninth Circuit apply TRAC to unreasonable-delay claims under the APA. *Vaz v. Neal*, 33 F.4th 1131, 1137 (9th Cir. 2022); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1070 (N.D. Cal. 2014). Those factors are: (1) whether the time the agency takes is governed by a rule of reason; (2) whether Congress has provided a timetable or other indication of expected speed; (3) whether human health and welfare are at stake; (4) the effect of expediting delayed action on competing agency priorities; (5) the nature and extent of the interests prejudiced by delay; and (6) whether impropriety is present. *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984).

Factors One and Two favor Plaintiff. USCIS received Plaintiff's Form I-485 on December 1, 2023, approved her Form I-526E, Immigrant Petition by Regional Center Investor on May 7, 2025, received her RFE response on December 3, 2025, and still had not adjudicated the Form I-485 when the Complaint was filed. The Complaint alleges that Plaintiff's Form I-485 had been pending approximately 841 days when filed. That delay is not governed by a meaningful rule of

reason where USCIS has already approved the underlying EB-5 petition and received Plaintiff's response to the RFE.

Factors Three and Five strongly favor Plaintiff because the delay now affects liberty, family integrity, removal exposure, and the permanent loss of the pending adjustment benefit. Plaintiff is detained and in active removal proceedings.  The Complaint alleges that removal before adjudication would cause abandonment of the I-485 and expose Plaintiff to a multi-year inadmissibility bar. This is not ordinary agency delay; it is delay that may extinguish the only pending benefit capable of resolving Plaintiff's status.

Factor Four is neutral or favors Plaintiff. Plaintiff does not ask the Court to approve her I-485 or reorder USCIS's adjudicatory system. She asks only for adjudication or a status report in a single case where removal may destroy the pending benefit before this Court can resolve the APA and mandamus claims. This case does not present the ordinary "queue-jumping" concern. Plaintiff is not merely asking USCIS to adjudicate faster than other applicants. She is detained, in active removal proceedings, and in an arriving-alien posture in which USCIS remains the only agency capable of adjudicating the pending Form I-485 before removal may destroy the benefit. The alternative to expedited action is not simply a longer wait; it is potential abandonment of the application and permanent loss of the immigration benefit at issue. That materially distinguishes this case from routine delay cases where the plaintiff seeks only priority over similarly situated applicants. Factor Six is neutral. Plaintiff need not prove bad faith to establish unreasonable delay, and the absence of alleged impropriety does not outweigh the severe prejudice created by continued inaction.

Taken together, the TRAC factors support a likelihood of success, or at minimum serious questions going to the merits under the Ninth Circuit's sliding-scale test. *Alliance for the Wild*

*Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011).

Plaintiff is substantially likely to succeed on her claims under the APA and the Mandamus Act that Defendants have unreasonably delayed adjudication of Plaintiff's I–485 application. *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing.").

Plaintiff also satisfies the requirements for mandamus. First, USCIS owes her a clear, nondiscretionary duty to adjudicate her Form I-485 within a reasonable time. Second, Plaintiff has no adequate alternative remedy because EOIR has not adjudicated, and in the current posture cannot practically provide, the USCIS adjudication Plaintiff seeks. Third, post-removal litigation cannot restore an I-485 that has been deemed abandoned or undo the multi-year inadmissibility consequences of removal before adjudication. The Mandamus Act gives district courts original jurisdiction over actions in the nature of mandamus to compel federal officers, employees, and agencies to perform duties owed to plaintiffs. 28 U.S.C. § 1361.

**B. Plaintiff is Likely to Suffer Irreparable Harm.**

Plaintiff's harm is not ordinary removal. It is removal before USCIS adjudicates the pending Form I-485, which may cause abandonment of the very immigration benefit that is the subject of this APA and mandamus action. In *Nken v. Holder*, 556 U.S. 418, 434–35 (2009), the Supreme Court held that removal is not categorically irreparable and that the burden of removal alone cannot establish irreparable injury. Here, Plaintiff faces case-specific harm because removal before adjudication may cause abandonment of her pending Form I-485 and expose her to a ten-year inadmissibility bar. If she is ordered removed before adjudication, her Form I-485 may be

13

deemed abandoned and she will be subject to a ten-year reentry bar under 8 U.S.C. § 1182(a)(9)(A). In *Leiva-Perez v. Holder*, 640 F.3d 962, 968–70 (9th Cir. 2011), the Ninth Circuit held that a stay applicant must show probable irreparable harm and either a strong likelihood of success or a substantial case on the merits with sharply tipping hardships. Plaintiff satisfies that standard because removal before USCIS adjudicates her Form I-485 would likely extinguish the very benefit this lawsuit seeks to preserve.

### 1. Removal Before Adjudication Would Cause Deemed Abandonment and Permanent Loss of the I-485 Benefit.

Plaintiff faces irreparable harm because she is detained, in active removal proceedings, and has not yet received a decision from USCIS on the only pending application capable of resolving her immigration status. The Complaint alleges that Plaintiff invested $1.6 million in U.S.-based projects that created significant employment and more than 20 jobs for American workers, that USCIS approved her Form I-526E, Immigrant Petition by Regional Center Investor, and that Plaintiff returned to the United States on July 28, 2025, pursuant to approved advance parole while her Form I-485 remained pending. If Plaintiff is removed before USCIS adjudicates her Form I-485, her adjustment application may be deemed abandoned and she may face a multi-year inadmissibility bar under 8 U.S.C. § 1182(a)(9)(A). 8 C.F.R. § 1245.2(a)(4)(ii); 8 U.S.C. § 1182(a)(9)(A).

Courts have recognized that in similar "deadline" or "use-it-or-lose-it" contexts, such as diversity-visa adjustment cases, agency inaction that would cause permanent loss of eligibility justifies mandamus or APA relief and defeats any argument that the plaintiff can await ordinary processing. *Nyaga v. Ashcroft*, 186 F. Supp. 2d 1244 (N.D. Ga. 2002); *Przhebelskaya v. USCIS*, 338 F. Supp. 2d 399 (E.D.N.Y. 2004). Post-removal relief could not restore Plaintiff to the status quo ante or revive an I-485 deemed abandoned by regulation, so only a present order preserving

Plaintiff's presence and compelling adjudication or a date-certain status report can prevent irreparable loss of the benefit.

Conversely, if USCIS grants her adjustment application before she is removed, Plaintiff will become a lawful permanent resident, and that adjudication will provide a direct basis to seek termination or dismissal of removal proceedings and release from detention.

### 2. Ongoing Detention and Collateral Harms Independently Support Irreparable Harm.

Plaintiff is currently detained while USCIS continues to delay adjudication of the only pending application that can resolve her immigration status. The Ninth Circuit has recognized irreparable harms associated with immigration detention, including economic burdens on detainees and their families and collateral harms to children of detainees. *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). The deprivation of constitutional rights also constitutes irreparable injury. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373, 9 (1976)). *See* also *S.D.B.B. v. Johnson*, No. 1:25-CV-882, 2025 WL 2845170, at *10 (M.D.N.C. Oct. 7, 2025) ("During his time detained, Petitioner is separated from his wife and family ... This loss of liberty in the absence of a TRO would constitute irreparable harm."); *Doe 1 v. Bondi*, 780 F. Supp. 3d 1277, 1285 (N.D. Ga. 2025) (finding irreparable harm due to loss of timely academic progress and high levels of stress and anxiety resulting from the uncertainty around their futures).

### 3. Loss of the EB-5 Investment Benefit Is a Separate Equitable Harm.

Plaintiff's pending I-485 is not a speculative or preliminary filing. The Complaint alleges that she invested $1.6 million in U.S.-based projects that created significant employment and over 20 jobs for American workers, and USCIS approved the underlying Form I-526E, Immigrant

15

Petition by Regional Center Investor on May 7, 2025. Removal before adjudication would therefore risk destroying the immigration benefit tied to that investment after USCIS approved her Form I-526E, Immigrant Petition by Regional Center Investor. That harm is not compensable by money damages in this action and cannot be adequately remedied after removal.

**4.** *Published Stay Authority Supports Interim Relief.*

This case satisfies the individualized irreparable-harm requirement under *Nken* and *Leiva-Perez*. Unlike ordinary removal cases, Plaintiff's removal would likely destroy the pending immigration benefit that is the subject of this action. The requested stay is therefore necessary to prevent this case from becoming a post-removal dispute in which the principal benefit has already been lost. In a recent mandamus case, *Ding v. U.S. Citizenship & Immigr. Servs.*, challenging USCIS's delay in adjudicating an immigration benefit application, a district court granted a similar TRO and enjoined removal outside of the United States where the plaintiff showed imminent irreparable harm if detained, transferred, or removed during the pendency of the proceedings. No. 26-CV-00965-SVK, 2026 WL 370396, at *3 (N.D. Cal. Feb. 10, 2026) ("If Plaintiff were detained, transferred to another jurisdiction or removed during the pendency of these proceedings, there is no question that the harm would be irreparable."). That unpublished decision is consistent with published Ninth Circuit stay authority requiring a case-specific showing of probable irreparable harm, which Plaintiff has made here. *Leiva-Perez v. Holder*, 640 F.3d 962, 968–70 (9th Cir. 2011).

Therefore, Plaintiff's irreparable harm is imminent and actual. There is no adequate remedy at law to compensate Plaintiff for these harms. The only way to prevent ongoing harm is immediate injunctive relief.

## C.      Balance of Harms and Public Interest

Where the government is the opposing party, balancing of the equities and the public interest merge. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction. *Winter*, 555 U.S. at 24. Here, the balance of equities tips sharply in Plaintiff's favor because the harm to her including the loss of an opportunity for lawful permanent residence outweighs any potential harm to the government in delaying her removal while their own subagency—USCIS—adjudicates her application. Further, Plaintiff is not a danger or burden as she has no criminal convictions and complied with all of her reporting requirements prior to her unlawful detention.

And the public interest is served by upholding constitutional and statutory rights, ensuring due process, compelling government agencies to adhere to their own established rules, regulations, and international obligations, and ensuring that civil detention comports with due process. The public interest is also benefited where the government conserves scarce removal resources (and detention resources) for those who have no possibility of acquiring lawful status or who have been convicted of egregious crimes and present a danger to our society. Finally, Plaintiff merely asks the Court to preserve the status quo ante and does not impede DHS's ability to proceed with her ongoing removal proceedings or execute a removal order *if* USCIS ultimately denies her adjustment application. *See Abdelsalam v. Barr*, No. EDCV202608JGBKKX, 2021 WL 4734615, at *8 (C.D. Cal. Feb. 18, 2021) (finding the balance of equities favors a TRO where a "stay of removal would maintain the status quo, whereas absent a stay, Plaintiff may face the potential loss of his statutory right to litigate his MTR (or seek judicial review in case of denial), as well as the potential loss of his life and liberty.") (citing *Sied*, 2018 WL 1142202, at *27); *El Bitar v. Bondi*,

17

No. 3:25-CV-05431-JNW, 2025 WL 1447818, at *4 (W.D. Wash. May 19, 2025) (granting and holding that "a TRO precluding El Bitar's deportation would change little to nothing for the agencies involved. Meanwhile, absent a TRO, El Bitar will face life-changing and irreparable harm."). Thus, the balance of equities and consideration of the overall public interest strongly weigh in favor of granting the instant Motion.

The requested order also restores the status quo ante in the equitable sense: before DHS revoked parole, detained Plaintiff, and placed her in removal proceedings, Plaintiff was in the United States on parole with a pending I-485 before USCIS. Plaintiff seeks to preserve that adjudicatory posture long enough for USCIS to act and for this Court to provide meaningful relief.

## VI.   NO BOND IS NECESSARY

No security bond is required under Federal Rule of Civil Procedure 65(c) because Defendants face no realistic likelihood of harm from enjoining their conduct. *See El Bitar*, 2025 WL 1447818, at *4; *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) ("the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."); *see Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'").

## VII.   CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction and enter an order providing the following relief:

1. Temporarily staying removal and enjoining Defendants, their officers, agents, employees, attorneys, and all persons acting in concert with them from removing

18

Plaintiff Xiangying Chen from the United States pending further order of this Court, or at minimum until USCIS adjudicates Plaintiff's pending Form I-485;

2. Requiring USCIS to file a status report within seven (7) days identifying all remaining adjudicatory steps, whether any background, security, or eligibility issue remains outstanding, and a date certain by which USCIS will issue a final decision;

3. Alternatively or additionally, requiring USCIS to adjudicate Plaintiff's pending Form I-485 within fourteen (14) days of the Court's order, or within the soonest feasible period identified in USCIS's status report, not to exceed 21 days absent further order of the Court;

4. Clarifying that nothing in the order requires USCIS to approve Plaintiff's Form I-485 or otherwise dictates the substance of the agency's adjudication;

5. Waiving any bond requirement under Rule 65(c), or setting bond at $0, because Defendants face no realistic likelihood of compensable harm from the requested temporary relief; and

6. Granting such other and further relief as the Court deems just and proper.

Counsel for Respondents was contacted on May 1, 2026 and has not yet responded.

Respectfully Submitted,

This 13th day of May, 2026.

/s/ Karen Weinstock
Karen Weinstock
Attorney for Plaintiff (pro hac vice)
Weinstock Immigration Lawyers, P.C.
1827 Independence Square
Atlanta, GA 30338
Phone: (770) 913-0800
Fax: (770) 913-0888
kweinstock@visa-pros.com

19

*/s/ Sarah L. Vuong*
Sarah L. Vuong
Local Counsel
Ariela Lake Law & Consulting PLLC
CA Bar No. 258528
1221 Hermosa Ave. Suite 101
Hermosa Beach, CA 90254
(202) 996-5757
Sarah@allc.law

## **CERTIFICATE OF SERVICE**

I certify that on May 13, 2026, I electronically filed the foregoing Document with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to Defendants' attorney(s) of record.

*/s/ Karen Weinstock*
Karen Weinstock
Attorney for Plaintiff (pro hac vice)
Weinstock Immigration Lawyers, P.C.
1827 Independence Square
Atlanta, GA 30338
Phone: (770) 913-0800
Fax: (770) 913-0888
kweinstock@visa-pros.com

21