UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 26-03094-KK-PVCx** | Date: | June 9, 2026 |
|---|---|---|---|
| Title: | ***Xiangying Chen v. Joseph B. Edlow et al.*** | | |

Present: The Honorable    KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Dominique Carr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**     **(In Chambers) Order DENYING Plaintiff's Second Ex Parte Application for Temporary Restraining Order [Dkt. 14] and VACATING June 18, 2026 Hearing**

**I.
INTRODUCTION**

On March 23, 2026, plaintiff Xiangying Chen ("Plaintiff") filed the operative Complaint against defendants Joseph B. Edlow, Kristi Noem, and Pamela Bondi (collectively, "Defendants"), raising claims related to the United States Citizenship & Immigration Service's ("USCIS") delay in adjudicating her Form I-485, Application to Register Permanent Residence or Adjust Status. ECF Docket No. ("Dkt.") 1, Complaint. On May 28, 2026, Plaintiff filed the instant Second Ex Parte Application for Temporary Restraining Order ("Second Application"). Dkt. 14, Second Application ("App.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Plaintiff's Second Application is **DENIED**.

**II.
BACKGROUND**

As alleged in the Complaint, Plaintiff is a 45-year-old noncitizen, mother, and caregiver to two children. Compl. at 7, 10. On July 21, 2023, Plaintiff filed a petition for an EB-5 immigrant investor visa. Id. at 8. On August 13, 2023, Plaintiff was admitted into the United States on a visa. Id. at 7.

On December 1, 2023, Plaintiff filed her Form I-485.  Id. at 8.  On April 30, 2024, USCIS granted Plaintiff advance parole.  Id.  On August 19, 2024, Plaintiff filed a second petition for an EB-5 immigrant investor visa.  Id. at 9.  On May 7, 2025, USCIS granted Plaintiff an EB-5 immigrant investor visa.  Id.

On July 28, 2025, Plaintiff was again granted advance parole.  Id.  On November 28, 2025, USCIS issued a Request for Evidence ("RFE"), to which Plaintiff responded on December 3, 2025.  Id.

On January 14, 2026, agents from the U.S. Department of Homeland Security ("DHS") arrested and detained Plaintiff without a warrant.  Id.  On the next day, DHS issued a Notice to Appear revoking Plaintiff's parole, charging Plaintiff as removable, and initiating removal proceedings.  Id. at 10.  On January 22, 2026, DHS filed additional charges of inadmissibility.  Id.

On February 19, 2026, Plaintiff filed a Petition for Writ of Habeas Corpus ("Petition") in the Middle District of Georgia, where she is confined, to challenge the lawfulness of her detention.  See Petition, X.C. v. Streeval, No. 4:26-cv-00295-CDL-AGH (M.D. Ga. Feb 19, 2026), Dkt. 1.

To date, USCIS has not adjudicated Plaintiff's pending Form I-485.  See Compl. at 9.  Plaintiff remains detained in immigration custody, and her Petition is pending before the district court in the Middle District of Georgia.  Id. at 10.

On March 23, 2026, Plaintiff filed the operative Complaint, raising the following causes of action:

1.  **Count One:**  Violation of the Administrative Procedure Act ("APA");
2.  **Count Two:**  Mandamus Relief; and
3.  **Count Three:**  Declaratory Judgment.

Id. at 26-37.  Plaintiff seeks an order compelling Defendants to adjudicate Plaintiff's pending Form I-485 within fourteen days or to file a status report on Plaintiff's Form I-485 within seven days.  Id. at 37-38.

On May 13, 2026, Plaintiff filed an Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction, which the Court construed as an ex parte application ("First Application").  Dkt. 12, First Application.  On May 19, 2026, the Court denied Plaintiff's First Application without prejudice because Plaintiff failed to comply with the Local Rules and Federal Rules of Civil Procedure or establish irreparable prejudice warranting ex parte relief.  Dkt. 13 at 2-3.

On May 28, 2026, Plaintiff filed the instant Second Application, purporting to "cure[]" the deficiencies identified in the Court's May 19, 2026 Order.  App. at 3.  Plaintiff seeks an order "enjoin[ing] Defendants . . . from taking any steps to execute or cause to occur any removal order against her . . . until USCIS adjudicates Plaintiff's pending Form I-485," prohibiting Defendants from "urging the Immigration Judge to enter a final removal order before USCIS has adjudicated Plaintiff's Form I-485" or "oppos[ing] a short continuance . . . for that limited purpose," and requiring Defendants "to adjudicate Plaintiff's Form I-485 as expeditiously as practicable."  Id. at 22-23.  In support of the Second Application, Plaintiff submits a notice from an Immigration Judge

setting a hearing for June 11, 2026, dkt. 14-1; her motion to terminate removal proceedings, dkt. 14-2; and the Immigration Judge's order denying Plaintiff's motion to terminate, dkt. 14-3.

On the same day, the district court presiding over Plaintiff's Petition in the Middle District of Georgia entered an order prohibiting her removal or transfer out of the detention facility where she is confined until further order of that court.  Order, <u>X.C.</u>, No. 4:26-cv-00295-CDL-AGH (M.D. Ga. May 28, 2026), Dkt. 16.

On May 29, 2026, Defendants filed an Opposition to Plaintiff's Second Application, arguing the Court lacks jurisdiction to grant Plaintiff's requested relief and Plaintiff fails to demonstrate either irreparable harm or a likelihood of success on the merits of her claim.  Dkt. 15, Opposition ("Opp.") at 11-25.

On June 1, 2026, Plaintiff filed a Reply in support of her Application.  Dkt. 16, Reply.[1]

This matter, thus, stands submitted.

### III.
### <u>LEGAL STANDARD</u>

Unlike regularly noticed motions, applications for ex parte relief are "inherently unfair" and "pose a threat to the administration of justice" because "the parties' opportunities to prepare are grossly unbalanced."  <u>Mission Power Eng'g Co. v. Cont'l Cas. Co.</u> ("<u>Mission Power</u>"), 883 F. Supp. 488, 490 (C.D. Cal. 1995).  Hence, to justify use of ex parte procedures, a party seeking ex parte relief must show: (1) "the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect."  <u>Id.</u> at 492.

Further, under Federal Rule of Civil Procedure 65, the Court may grant a temporary restraining order ("TRO") to prevent "immediate and irreparable injury."  Fed. R. Civ. P. 65(b)(1)(A).  Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  <u>Winter v. Nat. Res. Def. Council, Inc.</u>, 555 U.S. 7, 22 (2008).  The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest.  <u>See id.</u> at 20. The first factor – likelihood of success on the merits – "is a threshold inquiry and is the most important factor."  <u>Baird v. Bonta</u>, 81 F.4th 1036, 1040 (9th Cir. 2023) (citation modified) (quoting <u>Env't Prot. Info. Ctr. v. Carlson</u>, 968 F.3d 985, 989 (9th Cir. 2020)).  "If a movant cannot show a likelihood of success on the merits, then a court 'need not consider the other factors.'"  <u>Uber Techs., Inc. v. City of Seattle</u>, 168 F.4th 1202, 1219 (9th Cir. 2026) (quoting <u>Baird</u>, 81 F.4th at 1040).

///

---

[1] Pursuant to the Court's Civil Standing Order, "[u]nless otherwise ordered, reply briefs" for ex parte applications "are not allowed and will be stricken."  Dkt. 8 at 9.  In any event, the Reply does not alter the Court's findings or conclusions in this Order.

**IV.**

**DISCUSSION**

**A.    PLAINTIFF DOES NOT ESTABLISH IRREPARABLE PREJUDICE
WARRANTING THE USE OF EX PARTE PROCEDURES**

Here, Plaintiff once again fails to establish "circumstances justifying the issuance of an ex parte TRO." Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). As an initial matter, Plaintiff does not demonstrate irreparable "prejudice[] if the underlying motion is heard according to regular noticed motion procedures." Mission Power, 883 F. Supp. at 492. In her Second Application, Plaintiff primarily asserts harms from her potential removal, namely, the fact her Form I-485 "will automatically be deemed abandoned."[2] App. at 17. However, Plaintiff fails to show her removal is "immediate or imminent." Disney Enters., Inc. v. VidAngel, Inc., 224 F. Supp. 3d 957, 966 (C.D. Cal. 2016), aff'd, 869 F.3d 848 (9th Cir. 2017). As was the case when the Court denied Plaintiff's First Application, Plaintiff still is not subject to an order of removal, let alone one that has become final. See 8 C.F.R. § 1241.1 (specifying when a removal order becomes final). Absent a final order of removal, the Court cannot conclude Plaintiff's removal is sufficiently immediate or imminent such that she would suffer irreparable prejudice in the form of the abandonment of her Form I-485 absent ex parte relief.

Plaintiff attempts to address this deficiency initially identified in the Court's May 19, 2026 Order by repeatedly asserting her removal is "imminent" in light of her removal hearing scheduled for June 11, 2026. App. at 2-3. However, beyond merely alleging the Immigration Judge "has indicated an intent to order removal," Plaintiff offers no facts or evidence showing the Immigration Judge will in fact order her removed at that hearing. Id. at 2; see also Disney Enters., Inc., 224 F. Supp. 3d at 966 ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury . . . ." (citation modified) (quoting Caribbean Marine Servs. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988))).

Regardless, even assuming the Immigration Judge will order Plaintiff removed at the June 11, 2026 hearing, Plaintiff fails to show she will be imminently removed from the country thereafter. Among other things, assuming an order of removal is issued, Plaintiff may appeal the order to the Board of Immigration Appeals, which would render the order non-final. See 8 C.F.R. § 1241.1. Further, after the order of removal becomes final, Plaintiff may further file a petition for review, and the reviewing court may stay Plaintiff's removal, thereby delaying the start of the removal period.

---

[2] Plaintiff also asserts harms from her "detention and separation from her children due to her removal proceedings." App. at 18. The Court recognizes the harms imposed on individuals subject to immigration detention, such as "subpar medical and psychiatric care," "economic burdens imposed on detainees and their families," and "collateral harms to children of detainees." Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). Notably, however, Plaintiff does not challenge the lawfulness of her detention in this action; rather, Plaintiff is properly challenging the her detention through her Petition filed in the Middle District of Georgia. Further, as discussed below, Plaintiff fails to demonstrate a likelihood of success on the merits of her unreasonable delay claim. Therefore, absent a clear showing Plaintiff's detention is unlawful or has resulted from an unreasonable delay, the Court finds Plaintiff fails to sufficiently establish irreparable prejudice from her continued detention warranting an ex parte TRO. Cf. id. (finding irreparable harm from immigration detention where the plaintiffs demonstrated their detention was likely unconstitutional).

---

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk DC

<u>See</u> 8 U.S.C. §§ 1231(a)(1)(B), 1252.  Finally, even after Plaintiff enters the removal period, the government must, as a practical matter, "undertake [] steps to secure travel documents."  8 C.F.R. § 241.4(g)(2).  In light of these contingencies, the Court finds Plaintiff fails to adequately show her removal is imminent.

Moreover, as noted above, Plaintiff's removal has already been temporarily enjoined by the district court presiding over Plaintiff's Petition in the Middle District of Georgia.  <u>See</u> Order, <u>X.C.</u>, No. 4:26-cv-00295-CDL-AGH (M.D. Ga. May 28, 2026), Dkt. 16.  The district court's order prohibits Plaintiff's removal or transfer from the detention center where she is confined "until further order of the Court."  <u>Id.</u>  Therefore, unless granted leave by the district court, the government could not remove Plaintiff even if she was currently subject to a final order of removal.  Plaintiff offers no indication the district court will dissolve its order or otherwise permit the government to remove her in the immediate future.  The district court's order in Plaintiff's habeas case thus further undermines her claim of imminent removal.

Hence, Plaintiff fails to establish her removal is imminent such that she will be "irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures."  <u>Mission Power</u>, 883 F. Supp. at 492; <u>cf.</u> <u>Sepulveda Ayala v. Bondi</u>, 794 F. Supp. 3d 901, 915 (W.D. Wash. 2025) (finding irreparable harm where "the Government asserted that the only reason it had not removed [the petitioner] was to comply with th[e] Court's TRO").  Accordingly, Plaintiff once again fails to justify the use of ex parte procedures "to go to the head of the line in front of all other litigants and receive special treatment."  <u>Mission Power</u>, 883 F. Supp. at 492.

## B.   THE COURT LACKS JURISDICTION TO PREVENT OR DELAY PLAINTIFF'S REMOVAL

Additionally, the Court lacks jurisdiction to grant Plaintiff's requested relief with respect to the entry or execution of a removal order against her.  Specifically, the Court lacks the authority to enjoin Defendants from "taking any steps to execute or cause to occur any removal order against her . . . until USCIS adjudicates Plaintiff's pending Form I-485," or from "urging the Immigration Judge to enter a final removal order before USCIS has adjudicated Plaintiff's Form I-485" or "oppos[ing] a short continuance . . . for that limited purpose."  App. at 22-23.

Under 8 U.S.C. § 1252(a)(5) ("Section 1252(a)(5)"), "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal entered or issued."  8 U.S.C. § 1252(b)(9) further specifies "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order."  "Taken together, [Section] 1252(a)(5) and [Section] 1252(b)(9) mean that <u>any</u> issue – whether legal or factual – arising from <u>any</u> removal-related activity can be reviewed <u>only</u> through the [petition for review] process."  <u>J.E.F.M. v. Lynch</u>, 837 F.3d 1026, 1031 (9th Cir. 2016).  Among other things, Sections 1252(a)(5) and 1252(b)(9) preclude review of "the decision to seek removal," or "the process by which removability will be determined."  <u>Dep't of Homeland Sec. v. Regents of the Univ. of Cal.</u> ("<u>Regents</u>"), 591 U.S. 1, 19 (2020) (citation modified) (quoting <u>Jennings v. Rodriguez</u>, 583 U.S. 281, 294 (2018)).

Additionally, under 8 U.S.C. § 1252(g) ("Section 1252(g)"), a court lacks "jurisdiction to hear any cause or claim . . . arising from the decision or action by the Attorney General to <u>commence</u>

proceedings, <u>adjudicate</u> cases, or <u>execute</u> removal orders." 8 U.S.C. § 1252(g) (emphasis added). Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." <u>Ibarra-Perez v. United States</u>, 154 F.4th 989, 996 (9th Cir. 2025) (citation modified) (quoting <u>Reno v. Am.-Arab Anti-Discrimination Comm.</u>, 525 U.S. 471, 485 n.9 (1999)). Rather than "sweeping in any claim that can technically be said to 'arise from' the three listed actions," Section 1252(g) "refer[s] to 'just those three specific actions themselves.'" <u>Id.</u> (citation modified) (quoting <u>Jennings</u>, 583 U.S. at 294). Section 1252(g), thus, permits a court "to decide a 'purely legal question' that 'does not challenge the Attorney General's discretionary authority . . . even if the answer to that legal question . . . forms the backdrop against which the Attorney General later will exercise discretionary authority.'" <u>Id.</u> (citations omitted) (quoting <u>United States v. Hovsepian</u>, 359 F.3d 1144, 1155 (9th Cir. 2004)).

Here, Plaintiff seeks to enjoin Defendants from "seeking or effectuating a final removal order before USCIS has adjudicate[d] her pending Form I-485." App. at 2; <u>see also</u> <u>id.</u> at 23. To the extent Plaintiff seeks to enjoin Defendants from "urging the Immigration Judge to enter a final removal order before USCIS has adjudicated Plaintiff's Form I-485" or "oppos[ing] a short continuance . . . for that limited purpose," App. at 23, that request is plainly directed at "the decision to seek removal," or "the process by which removability will be determined" and, thus, falls outside the scope of this Court's jurisdiction, <u>Regents</u>, 591 U.S. at 19 (citation modified).

Further, to the extent Plaintiff seeks to the enjoin Defendants from "taking any steps to execute or cause to occur any removal order against her," the purpose and effect of this request, as she acknowledges, are to "temporarily delay" the Immigration Judge from "entering a final decision" ordering her removal "until USCIS adjudicates her I-485 application." App. at 3, 22-23. Plaintiff's request, thus, constitutes precisely a "claim that the Attorney General should have exercised discretion to delay [her] removal," <u>Arce v. United States</u>, 899 F.3d 796, 800 (9th Cir. 2018), and an "attempt[] to impose judicial constraints upon [Defendants'] prosecutorial discretion," <u>Reno</u>, 525 U.S. at 485 n.9. Hence, Plaintiff's request to delay her removal falls squarely within the scope of Section 1252(g)'s jurisdictional bar.[3] <u>See</u> <u>Poghosyan v. U.S. Dep't of Homeland Sec.</u>, No. CV 25-03091-SB-ADSx, 2025 WL 1287771, at *5 (C.D. Cal. May 1, 2025) (finding Section 1252(g) barred a request to enjoin the execution of a removal order pending adjudication of an application to adjust status), <u>appeal dismissed</u>, No. 25-2835, 2025 WL 3079095 (9th Cir. Aug. 19, 2025); <u>Patel v. Garland</u>, No. 21-17024, 2024 WL 722575, at *2 (9th Cir. Feb. 22, 2024) (same).

Plaintiff argues Section 1252(g) does not preclude consideration of her claims because the "gravamen" of her Complaint is "USCIS's unreasonable delay in adjudicating at Form I-485." App. at 9. However, the issue of whether Plaintiff's <u>claims</u> are jurisdictionally barred is separate from the question of whether this Court has the authority to grant Plaintiff's requested <u>relief</u>. As Plaintiff expressly concedes, she seeks a "a temporary pause on further removal proceedings . . . until USCIS adjudicates her adjustment application." App. at 10. Contrary to Plaintiff's assertions, such relief plainly interferes with the government's discretion over "whether" and "when" to remove her. <u>Rauda v. Jennings</u>, 55 F.4th 773, 777 (9th Cir. 2022) (citation modified) (quoting <u>Tazu v. Att'y Gen. U.S.</u>, 975 F.3d 292, 297 (3d Cir. 2020)). Further, while Plaintiff contends such relief is necessary "to preserve the status quo" in light of the USCIS's alleged delay in adjudicating her Form I-485, <u>id.</u>, she

_____

[3] As noted above, Plaintiff's request to enjoin the execution of her removal is also premature at this stage because there is no final, executable order of removal against her.

does not show her unreasonable delay claims "form[] the backdrop against which the Attorney General later will exercise discretionary authority." Hovsepian, 359 F.3d at 1155. In other words, even if Plaintiff ultimately establishes USCIS unreasonably delayed the adjudication of her Form I-485, she fails to demonstrate USCIS's delay otherwise limits the government's discretion to remove her in the meantime.

Accordingly, the Court lacks jurisdiction to grant Plaintiff's requested relief with respect to the prosecution of her removal proceedings and the timing of her removal from the United States.[4]

## C.   PLAINTIFF DOES NOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS

Finally, Plaintiff fails to demonstrate a likelihood of success on the merits on her unreasonable delay claims.[5] Plaintiff brings her claims under the APA and Mandamus Act. See Compl. at 26-36. "[M]andamus relief and relief under the APA are 'in essence' the same." Vaz v. Neal, 33 F.4th 1131, 1135 (9th Cir. 2022) (citation modified) (quoting R.T. Vanderbilt Co. v. Babbitt, 113 F.3d 1061, 1065 (9th Cir. 1997)). Therefore, when, as here, "a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [a court] may elect to analyze the APA claim only." Id.

Under the APA, an agency must address a matter before it "within a reasonable time," and a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1). In evaluating whether an agency's delay is unreasonable under the APA, courts apply the six-factor balancing test set forth in Telecommunications Research & Action Center v. FCC ("TRAC"), 750 F.2d 70, 79-80 (D.C. Cir. 1984). Vaz, 33 F.4th at 1137. The TRAC factors are:

1)   the time agencies take to make decisions must be governed by a rule of reason;

---

[4] Because the Court finds it lacks jurisdiction to enjoin Defendants from proceeding with Plaintiff's removal, an order granting a stay "to preserve the status quo" pending a determination of the Court's jurisdiction is unnecessary. App. at 9. Further, as noted, the district court presiding over Plaintiff's Petition in the Middle District of Georgia has already entered an order enjoining her removal until further order of that court. Order, X.C., No. 4:26-cv-00295-CDL-AGH (M.D. Ga. May 28, 2026), Dkt. 16. In light of Section 1252(g)'s jurisdictional bar and the existing court order barring Plaintiff's removal pending the resolution of her Petition, the Court sees no reason to issue an additional order staying Plaintiff's removal for the purposes of determining the Court's jurisdiction.

[5] As Plaintiff acknowledges, she requests a mandatory injunction to the extent she seeks to require USCIS to either adjudicate her Form I-485 or file a status report providing a timeline for its decision. App. at 8-9. Because mandatory injunctions alter the status quo, they are "particularly disfavored" and, thus, require a moving party to show the "facts and law clearly favor" them. Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ., 82 F.4th 664, 684 (9th Cir. 2023) (citation modified) (first quoting Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 879 (9th Cir. 2009); and then quoting Stanley v. Univ. of S. Cal., 13 F.3d 1313, 1320 (9th Cir. 1994)). Accordingly, Plaintiff is entitled to an injunction requiring expedited adjudication of her Form I-485 only if she can satisfy this "higher burden." Id.

---

2)      where Congress has provided a timetable or other indication of the speed
with which it expects the agency to proceed in the enabling statute, that
statutory scheme may supply content for this rule of reason;

3)      delays that might be reasonable in the sphere of economic regulation are less
tolerable when human health and welfare are at stake;

4)      the court should consider the effect of expediting delayed action on agency
activities of a higher or competing priority;

5)      the court should also take into account the nature and extent of the interests
prejudiced by delay; and

6)      the court need not find any impropriety lurking behind agency lassitude in
order to hold that agency action is unreasonably delayed.

Id. (citation modified) (quoting TRAC, 750 F.2d at 80).

As an initial matter, the Court has jurisdiction over Plaintiff's claims.  As noted above, Section 1252(g) bars judicial review of "the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders."  8 U.S.C. § 1252(g) (emphasis added).  Here, USCIS's delay in adjudicating Plaintiff's Form I-485 does not arise from any of the "three discrete events" enumerated in Section 1252(g).  Reno, 525 U.S. at 482.  Indeed, the USCIS's process of adjudicating Plaintiff's Form I-485 is independent of the government's prosecution of the charges of removability against her, and Plaintiff could bring her unreasonable delay claims even if the government had not initiated removal proceedings.  See Concepcion Concepcion v. Mullin, No. 25-cv-03221-DMS-MMP, 2026 WL 1388761, at *3 (S.D. Cal. May 18, 2026) ("The duty to adjudicate Plaintiff's adjustment application would exist regardless of whether removal proceedings were ever initiated at all.").  Therefore, Section 1252(g) does not preclude this Court from reviewing Plaintiff's unreasonable delay claims.  Accord Sepulveda Ayala v. Noem, No. 3:25-cv-5185-JNW, 2025 WL 1616075, at *3 (W.D. Wash. June 5, 2025).

In their Opposition, Defendants contend 8 U.S.C. § 1252(a)(2)(B)(ii) ("Section 1252(a)(2)(B)(ii)") preclude this Court from exercising jurisdiction over Plaintiff's unreasonable delay claims.  Opp. at 11-16.  Section 1252(a)(2)(B)(ii) precludes courts from reviewing, in relevant part, "any [] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."  8 U.S.C. § 1252(a)(2)(B)(ii).  The phrase "any other decision or action" "expansively [] cover[s] all determinations made in support of a grant of discretionary relief under [Section 1252(a)(2)(B)(ii)]."  Zia v. Garland, 112 F.4th 1194, 1200 (9th Cir. 2024).  In interpreting the scope of Section 1252(a)(2)(B)(ii), courts apply a "presumption favoring judicial review of administrative action, which may be overcome only by "clear and convincing evidence" of contrary congressional intent.  Kucana v. Holder, 558 U.S. 233, 251-52 (2010) (citation modified) (quoting Reno v. Cath. Soc. Servs., Inc., 509 U.S. 43, 64 (1993)).  Relevant here, 8 U.S.C. § 1255(a) ("Section 1255(a)") provides a noncitizen's status "may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of a[] [noncitizen] lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed."

Here, the Court finds Section 1252(a)(2)(B)(ii) does not bar Plaintiff's unreasonable delay claims for several reasons. First, the words "decision or action" in Section 1252(a)(2)(B)(ii) "point to some affirmative conduct, not mere inaction or delay." Lovo v. Miller, 107 F.4th 199, 207 (4th Cir. 2024). While Defendants characterize Plaintiff's claims as challenging USCIS's "choices on timing, prioritization, vetting, investigations, and resource allocation," they offer no indication USCIS has, in fact, affirmatively made any such choice with respect to Plaintiff's Form I-485. Opp. at 14-15. Rather, Plaintiff challenges Defendants' "continued inaction" and failure to undertake any affirmative "decision or action" on her Form I-485. App. at 12; see also Ayala v. Noem, 781 F. Supp. 3d 1187, 1203-04 (D.N.M. 2025) ("Failure to act on Plaintiffs' applications, or delaying unreasonably in doing so, is not a decision or action at all."). Thus, the Court declines to construe Section 1252(a)(2)(B)(ii) as "protecting the entire process of an agency's decision-making, . . . including the pace," Opp. at 13-14, which would "operate to deprive courts of jurisdiction to review almost any USCIS action," Lovo, 107 F.4th at 210.

Second, while Section 1255(a) grants the Attorney General discretion over the decision to grant or deny an application for status adjustment, it "does not specify discretion to fail to adjudicate an application or to control the pace of adjudication free from judicial review." Pimpalkhute v. Edlow, No. 25-cv-2433-BJR, 2026 WL 1283512, at *3 (W.D. Wash. May 11, 2026). To the contrary, the regulation implementing Section 1255(a) specifies an applicant for status adjustment "shall be notified of the decision of the director and, if the application is denied, the reasons for the denial." 8 C.F.R. § 245.2(a)(5)(i) (emphasis added). As applied to Plaintiff's pending Form I-485, this regulatory provision "establishes a 'mandatory duty to act' on Form I-485 applications." Varniab v. Edlow, No. 25-cv-10602-SVK, 2026 WL 485490, at *11 (N.D. Cal. Feb. 20, 2026). Thus, while USCIS has "discretion as to whether to grant or deny particular applications for immigration benefits, [it] do[es] not have discretion to indefinitely and categorically delay or withhold adjudication of such applications." Id. at *12.

Defendants' arguments to the contrary are unavailing. In support of their position, Defendants cite the Ninth Circuit's decisions in Zia and Garcia v. United States Citizenship and Immigration Service, 146 F.4th 743 (9th Cir. 2025), and the Supreme Court's decision in Patel v. Garland, 596 U.S. 328 (2022). Opp. at 12-13. However, unlike the plaintiff in Garcia, Plaintiff does not challenge a denial of her application for status adjustment. See 146 F.4th at 752. Further, unlike the plaintiffs in Zia and Patel, Plaintiff does not challenge "factual findings and other preliminary decisions made in connection with final decisions on individual applications for immigration benefits." Gao v. Mullin, No. 25-cv-01479-SVK, 2026 WL 948665, at *3 (N.D. Cal. Apr. 8, 2026) (citation modified) (quoting Varniab, 2026 WL 485490, at *6). Indeed, it does not appear any preliminary findings have been made with respect to Plaintiff's Form I-485, let alone a final decision.

Defendants also cite nonbinding district court cases and out-of-circuit authorities for the proposition that Section 1252(a)(2)(B)(ii) "bars jurisdiction over USCIS's pace of adjudication." Opp. at 13. However, the instant action is readily distinguishable from these cases, which involved applications for status adjustment held in abeyance because of a lack of available immigrant visa numbers. See Gao, 2026 WL 948665, at *4 (distinguishing out-of-circuit authorities addressing applications for status adjustment delayed because of visa retrogression). Importantly, the decision to place an application on hold until a visa number becomes available is authorized under 8 C.F.R. § 245.2(a)(5)(ii), which provides an application for status adjustment "shall not be approved until an immigrant visa number has been allocated by the Department of State." See Varniab, 2026 WL 485490, at *8 (discussing the visa retrogression process). Here, in contrast, Plaintiff does not

challenge USCIS's decision to place her Form I-485 on hold. As discussed above, it does not appear USCIS has affirmatively made any such decision with respect to Plaintiff's Form I-485. Therefore, consistent with the majority of district courts in the Ninth Circuit, the Court finds Section 1252(a)(2)(B)(ii) does not preclude review of Plaintiff's unreasonable delay claims. See id. at *8 (collecting cases); Concepcion Concepcion, 2026 WL 1388761, at *8 n.7 (same); Subramanyan v. Selby, No. SACV 26-00113-DFM, 2026 WL 1196250, at *3 (C.D. Cal. Apr. 27, 2026) (rejecting the same jurisdiction argument where the plaintiffs' "EB-5 visa category [was] current, the underlying I-526E petition ha[d] been approved, and [the defendants] [] identified no obstacle to adjudication").

Nonetheless, turning to the merits of Plaintiff's claims, the Court finds Plaintiff fails to make a clear showing of unreasonable delay. The first TRAC factor, which is the "most important," Vaz, 33 F.4th at 1138 (citation modified) (quoting In re A Cmty. Voice, 878 F.3d 779, 786 (9th Cir. 2017)), weighs in favor of Defendants. Plaintiff asserts USCIS's delay in adjudicating her Form I-485 is not governed by a rule of reason because her Form I-485 had been pending for approximately 28 months at the time she filed her Complaint, and USCIS "has already approved the underlying EB-5 petition and received Plaintiff's response to the RFE." App. at 15. While the Court recognizes the uncertainty caused by the 28-month delay in Plaintiff's Form I-485, the length of that delay alone is not unreasonable. See Yavari v. Pompeo, No. CV 19-02524-SVW-JCx, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."); accord Liu v. Denayer, No. CV 21-6653-DMG-MRWx, 2022 WL 17370527, at *4 (C.D. Cal. July 18, 2022) (collecting cases); Zhang v. Cissna, No. CV 18-9696-MWF-JCx, 2019 WL 3241187, at *5 (C.D. Cal. Apr. 25, 2019) (same). Further, to the extent Plaintiff asserts the delay in processing her Form I-485 has become unreasonable in light of her EB-5 petition and response to USCIS's RFE, she fails to show similar applications are typically adjudicated in fewer than 28 months or that her application is being delayed in comparison to similar applications. See Subramanyan, 2026 WL 1196250, at *5 (noting the lack of differential treatment weighed against a claim of unreasonable delay); Shahijani v. Laitinen, No. CV 23-03967-RGK-MRWx, 2023 WL 6889774, at *4 (C.D. Cal. Oct. 6, 2023) (same). Moreover, Defendants contend, and Plaintiff does not dispute, that USCIS adjudicates Forms I-485 on a "first-in, first-out" basis. Opp. at 17-18. This method of processing applications "qualifies as a 'rule of reason' that satisfies the first TRAC factor."[6] Kamath v. Campagnolo, No. SACV 21-01044-CJC-ADSx, 2021 WL 4913298, at *3 (C.D. Cal. Aug. 13, 2021) (collecting cases).

The second TRAC factor also weighs in favor of Defendants. Plaintiff identifies no mandatory timetable specified by Congress for adjudicating Forms I-485. To the extent Plaintiff invokes 8 U.S.C. § 1571(b) – which provides "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application" – such "'sense of Congress' language is 'non-binding, legislative dicta,' that creates

---

[6] The Court further notes the fact USCIS issued an RFE suggests it is "moving the adjudication process forward." Khachutorov v. Britten, 792 F. Supp. 3d 1106, 1116 (C.D. Cal. 2025). While Plaintiff notes USCIS "has continued to delay a decision for another 150 days" after she responded to the RFE, she does not offer any evidence indicating USCIS typically issues a decision more quickly after receiving a response to an RFE. App. at 13 n.3. Cf. Cheng v. Baran, CV 17-2001-RSWL-KSx, 2017 WL 3326451, at *6 (C.D. Cal. Aug. 3, 2017) (finding no unreasonable delay where the government provided the plaintiff a definite deadline to respond to an RFE and would thereafter review the plaintiff's response).

no obligations on USCIS." Liu, 2022 WL 17370527, at *4 (quoting Yang v. Cal. Dep't of Soc. Servs., 183 F.3d 953, 961-62 (9th Cir. 1999)).

The third and fifth TRAC factors, which are "are often considered together," weigh in Plaintiff's favor. Id. at *5. Plaintiff asserts, and Defendants do not dispute, that her removal pending USCIS's delayed adjudication of her Form I-485 "would cause abandonment of the I-485 and expose Plaintiff to a multi-year inadmissibility bar." App. at 16. Further, Plaintiff has been detained in immigration custody and separated from her children pending a determination on her application for status adjustment. See id. at 4-5. The Court recognizes the serious hardships caused by USCIS's delay on Plaintiff and her family. Nonetheless, for the purposes of the instant Second Application, Plaintiff does not demonstrate the magnitude of these hardships alone establishes unreasonable delay. As discussed above, Plaintiff fails to demonstrate her removal is immediate or imminent, and she does not challenge the lawfulness of her detention or removal in the instant action. Thus, under these circumstances and in the context of the instant Second Application, the Court finds the third and fifth TRAC factors only slightly favor Plaintiff.

The fourth TRAC factor weighs in Defendants' favor. As other district courts have consistently recognized, ordering the government to process an individual noncitizen's application for immigration relief would move that noncitizen "to the front of the line and all other similarly situated applicants back." Liu, 2022 WL 17370527, at *5; accord Subramanyan, 2026 WL 1196250, at *5-6. "In such circumstances, where an agency's progress on one individual's application would necessarily negatively impact another application, courts have held that plaintiffs' recourse is with Congress, not the courts." Liu, 2022 WL 17370527, at *5.

Plaintiff argues her Form I-485 "does not present the ordinary 'queue-jumping' concern" because she is detained and in active removal proceedings, which may result in the "potential abandonment of the application and permanent loss of the immigration benefit at issue." App. at 16. The Court again recognizes the difficulties caused by the government's simultaneous delay in adjudicating Plaintiff's Form I-485 and efforts to remove Plaintiff from the country. However, even considering Plaintiff's particular circumstances, the Court notes an order requiring expedited adjudication of her Form I-485 would still "unfairly prejudice" similarly situated applicants – that is, noncitizens with pending applications for immigration relief who are also in active removal proceedings, "including those pending for longer periods of time." Ferro v. Mayorkas, No. CV 23-02033-SB-MRWx, 2023 WL 4291841, at *4 (C.D. Cal. June 16, 2023). Plaintiff thus does not provide a compelling reason for this Court "to reorder [USCIS's] priorities." Shahijani, 2023 WL 6889774, at *5.

Finally, the sixth TRAC factor is neutral, as Plaintiff provides no allegation or evidence of bad faith. See Liu, 2022 WL 17370527, at *6.

In sum, three factors favor Defendants, two factors slightly favor Plaintiff, and one factor is neutral. Notably, the first factor, which is the most important, weighs in Defendants' favor. Therefore, balancing the TRAC factors, the Court finds Plaintiff fails to make a clear showing of a likelihood of success on the merits of her unreasonable delay claims. Hence, the Court "need not consider the other [Winter] factors," and Plaintiff's Second Application must be denied. Uber Techs., Inc., 168 F.4th at 1219 (citation modified) (quoting Baird, 81 F.4th at 1040).

///

## V.
## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs' Second Application is **DENIED**.  The hearing set for June 18, 2026 is **VACATED**.

    **IT IS SO ORDERED**.